Affirmed and Memorandum Opinion filed September 2, 2008








Affirmed and Memorandum Opinion filed September 2, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00276-CR

_______________

 

ARCH RAY CLARK, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 1073668

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

Appellant,
Arch Ray Clark, pleaded Aguilty@ to the offense of violation of a protective order.  The
trial court assessed punishment of two years= confinement.  All dispositive issues
are clearly settled in law.   Accordingly, we issue this memorandum opinion and
affirm.  See Tex. R. App. P. 47.4. 

I. Background








On
February 22, 2006, the 257th District Court of Harris County entered a
protective order prohibiting appellant from, inter alia, committing
family violence against Misa Phillips, communicating directly with Phillips in
a threatening or harassing manner, or engaging in conduct directed specifically
toward Phillips that was likely to harass, annoy, alarm, abuse, torment, or
embarrass Phillips.  On June 21, 2006, the State charged appellant with
violating the protective order.

Appellant
pleaded Aguilty@ and signed: (1) a written AWaiver of Constitutional Rights,
Agreement to Stipulate, and Judicial Confession@ wherein he Awaive[d] the right of trial by jury@; and (2) written admonishments
waiving Aall rights given to [appellant] by
law@ and the Aright to a jury in this case.@  There was no agreed recommendation
regarding punishment.  The trial court accepted appellant=s plea and found him guilty.

The trial
court reset the case and ordered a pre-sentence investigation (APSI@) report.  At the punishment hearing,
appellant and the State presented evidence, and the trial court assessed
punishment of two years= confinement. 

II. Analysis

In two
issues, appellant contends (1) the trial court erred by assessing punishment
because appellant did not validly waive his statutory right to have punishment
decided by a jury, and (2) the trial court=s sentence violated appellant=s rights to due process of law under
the United States Constitution and due course of law under the Texas
Constitution.

A.        Texas Code of Criminal
Procedure Article 26.14

A
criminal defendant has no constitutional right to have a jury determine
punishment.  Barrow v. State, 207 S.W.3d 377, 380 (Tex. Crim. App.
2006).  However, in Texas, a criminal defendant has a statutory right to have
punishment decided by a jury unless the right is validly waived.  See Tex.
Code Crim. Proc. art. 26.14 (Vernon 1989).








Appellant
cites Smith v. State, in which the court held that waiver of the right
to trial by jury on the issue of guilt does not necessarily waive the right to
jury assessment of punishment.   See Smith v. State, 223 S.W.3d 690, 693
(Tex. App.CTexarkana 2007, no pet.).   Appellant argues he did not validly waive the
statutory right provided by article 26.14 because he did not execute an express
waiver.  However, we conclude Smith is factually distinguishable from
this case.

Under
the unique facts of Smith, the defendant=s written waiver originally stated AI give up my right to a jury both as
to my guilt and assessment of my punishment.@  Id.  However, on the signed
waiver form, the defendant crossed out the phrase Aand assessment of my punishment.@  Id.  Because the defendant
struck this language, the Smith court held that the defendant maintained
his statutory right to have a jury assess punishment, despite waiving his right
to a jury trial on guilt.  Id.  By contrast, in this case, appellant
signed a waiver stating AI waive the right of trial by jury.@  Further, appellant signed written
admonishments waiving Aall rights given to [appellant] by law@ and the Aright to a jury in this case.@  Such written waivers, voluntarily
signed, are sufficient to waive appellant=s statutory right to have a jury
determine punishment.  See Edwards v. State, 663 S.W.2d 142, 143B44 (Tex. App.CHouston [1st Dist.] 1983, no pet.)
(holding that defendant=s waiver of his Aright to a trial by jury in the case@ waived defendant=s rights to have jury assess guilt
and punishment); see also Richard v. State, No. 14-07-00076-CR, 2008 WL
123873, at *1B2 (Tex. App.CHouston [14th Dist.] May 14, 2008, pet. ref=d) (mem. op.) (holding signed written
plea waiving right to trial by jury coupled with signed written admonishments
waiving Aall rights to [appellant] by law@ and the Aright to a jury trial in this case@ constituted valid waiver of article
26.14 right to have jury assess punishment).








Further,
we note that under article 42.12, section 9, the court is required to order a
PSI when it assesses punishment.  See Tex. Code Crim. Proc. art. 42.12, ' 9(a) (Vernon Supp. 2008).  In this
case, appellant agreed to the preparation and publication of a PSI and
participated in the court=s punishment hearing without objection.  Accordingly, the
record indicates appellant knowingly, intelligently, and voluntarily waived his
statutory right to have a jury assess punishment.  Appellant=s first issue is overruled.

B.        Due Process  

In his
second issue, appellant contends the trial court=s sentence violated his rights to due
process of law under the United States= Constitution and due course of law
under the Texas Constitution.  Appellant argues that the trial court
misunderstood terms of the protective order and its misunderstanding unduly
affected assessment of punishment. 

A court
violates a defendant=s due process rights if it assesses a predetermined sentence,
arbitrarily refuses to consider the entire punishment range, or refuses to
consider mitigating evidence when determining punishment.  See McClenan v.
State, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983), overruled on other
grounds by De Leon v. Aguilar, 127 S.W.3d 1, 5 (Tex. Crim. App.
2004).  However, when a defendant waives a jury trial, the trial court
has discretion to assess punishment within the range provided by law.  Morano
v. State, 572 S.W.2d 550, 551 (Tex. Crim. App. 1978).  Typically,
assessment of punishment within the statutory range provided by the legislature
will not be an abuse of discretion.  Id.;  Baldridge v. State, 77
S.W.3d 890, 893B94 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d.).  Further, when the trial court
assesses punishment, the question of whether an accused is entitled to
probation rests absolutely within the trial court=s discretion pursuant to the
guidelines of the Code of Criminal Procedure, and no authority exists requiring
that the accused receive such clemency.  See Rodriguez v. State, 502
S.W.2d 13, 14 (Tex. Crim. App. 1973).








In this
case, although appellant disagreed with the trial court regarding the type of 
conduct proscribed under the protective order, he did not present a timely
request, objection, or motion to complain regarding any alleged violation of
due process under the federal constitution or violation of due course of law
under the state constitution.  See Tex. R. App. P. 33.1.  Appellant=s failure to timely present these
complaints to the trial court resulted in waiver of any error.  See id. 

However,
even assuming arguendo that the issue had been preserved, we cannot
conclude the trial court abused its discretion in assessing appellant=s sentence.  Here, the protective
order prohibited appellant from committing violence, communicating directly in
a threatening or harassing manner, or engaging in conduct that was likely to
harass, annoy, alarm, abuse, torment, or embarrass Phillips.  During appellant=s punishment hearing, the following
exchange occurred:

THE COURT:
And when was the last time that you communicated with [your children]?

APPELLANT:
I haven=t communicated with them since September of >06.

THE COURT:
And then what about your wife?

APPELLANT:
I haven=t communicated with her since just after . . . in jail
I had a phone call, which I believe was in January.

APPELLANT=S COUNSEL: What was the purpose of that?

APPELLANT:
The purpose of that was just to - - 

APPELLANT=S COUNSEL: Have her appear at your plea date?

APPELLANT:
Yes.

. . .

THE COURT:
Okay.  Why didn=t you just get your lawyer to do that?

APPELLANT:
I=m sorry?

THE COURT:
Why didn=t you get your lawyer to do that?

APPELLANT:
Well, he=s been handling all these, you know, details.

THE COURT:
I mean, you were in custody because you=re
having phone contact with her and then you called her from the jail?  I mean,
did I hear that right?  Is that what you said?








APPELLANT: Well, I called - - I made one phone call
from the jail, from here.  I felt that I didn=t - - 

THE COURT: To her.

APPELLANT: Well, there was - - 

THE COURT: Is that right?

APPELLANT: Yes.  But as far as I understood, your
Honor, there wasn=t an order that I not make a phone call to her at that
time.

THE COURT: Wow, [appellant].  What is it about no
contact that you don=t get?  There=s
still a protective order in place.

APPELLANT: But the protective order that I was under
didn=t stipulate no contact whatsoever.  It stipulated I
could not go within a certain distance of the house and her place of employment
and so on and so forth.  It didn=t
stipulate I could not speak to her or be anywhere near her person.

THE COURT: But remember when your bond got raised
because you were having phone contact with her.  That=s when you went back to jail.  And then from jail you
called her again.

APPELLANT: Well, I did, in fact, call her, your Honor;
but it wasn=t because I knowingly violated any kind of order.  At
that time I was not aware that I was under an order that forbode [sic] me from
calling her.  If I may, your Honor, the order that I was under - - 

THE COURT: Just as a suggestion, it might have been a
really good idea to check on that before you made that call.

APPELLANT: Yes.








Appellant
contends this exchange demonstrates the sentence assessed was unduly influenced
by the trial court=s misunderstanding of terms in the protective order. 
However, we cannot conclude from this record that the trial court=s misunderstanding, if any, of terms
in the protective order unduly affected the sentence.  During the punishment
hearing, appellant admitted to charges in the indictment; namely, striking
Phillips with his hand, in violation of the protective order.  Additionally,
the record indicates that appellant was previously convicted for the offense of
assault on a family member.  Further, under the Penal Code, violation of a
protective order by committing an assault is classified as a third degree
felony, punishable by a term of imprisonment not less than two years or more
than ten years.  See Tex. Pen. Code Ann. ' 25.07 (Vernon 2003 & Supp.
2008); Tex. Pen. Code Ann. ' 12.34 (Vernon 2003). After appellant pleaded Aguilty@ to felony violation of a protective
order, the trial court sentenced him incarceration for two yearsCthe minimum sentence prescribed by
the Penal Code.  See Tex. Pen. Code Ann. ' 12.34.  Finally, as stated above,
there is no authority requiring the trial court to impose community supervision
or deferred adjudication.  See Rodriguez, 502 S.W.2d at 14.

Accordingly,
we cannot conclude the trial court abused its discretion in assessing
punishment.  Appellant=s second issue is overruled.

The
judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed September 2, 2008.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).