**Opinion issued July 22, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NOS. 01-13-00094-CR, 01-13-00095-CR,
01-13-00097-CR, 01-13-00098-CR**

————————————

**JOHN R. DOLARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Case Nos. 11-DCR-57796, 11-DCR-57797,
12-DCR-59899, 12-DCR-59900**

---

**MEMORANDUM OPINION**

Appellant John R. Dolard pleaded guilty to two counts of aggravated sexual

assault of a child and two counts of indecency with a child. *See* TEX. PENAL CODE

ANN. §§ 21.11, 22.021(a)(2) (West 2011). After a hearing at which both parties

presented evidence, the trial court assessed punishment at twenty years in prison, to run concurrently on all counts. Dolard filed a motion for new trial, seeking a second punishment hearing. In that motion, he argued for the first time that the trial court had impermissibly used the fact that he did not testify as an aggravating factor in assessing punishment, and also that unreliable scientific testimony had been improperly admitted. The motion was denied, and Dolard timely filed notice of appeal. Finding no reversible error, we affirm.

## Background

John Dolard was indicted by a grand jury on two counts of aggravated sexual assault of a child and two counts of indecency with a child. He pleaded guilty, and a punishment hearing was held without a jury.

At the hearing, the State called Doctor Michael Arambula, a forensic psychiatrist. Dolard did not object to the offer of expert testimony. Dr. Arambula testified that he had interviewed Dolard and found that he had been sane at the time of his offenses. He diagnosed Dolard with features of social anxiety disorder and obsessive compulsive disorder. He also described Dolard as having a history of sexual deviance with pedophilic features. Dr. Arambula was asked on direct examination why he did not diagnose Dolard with pedophilia. The response was that pedophilia as described by the Diagnostic and Statistical Manual of Mental Disorders IV (DSM IV) requires that the subject's sexual interest in children

2

persist for six months, and Dr. Arambula had been unable to determine if Dolard's pedophilia had persisted for that amount of time. Dr. Arambula noted his disagreement with the six-month criterion and described it as unsupported in the scientific literature. During cross-examination, Dolard's counsel asked whether he considered the DSM IV to be a "learned treatise," and he answered that he did not regard it as such. Dr. Arambula was not presented with the legal definition of a "learned treatise."

Also, during the cross-examination of Dr. Arambula, defense counsel sought to introduce photographs of Dolard's apartment to show that Dolard was a hoarder. The State objected that the pictures had not been authenticated. The court sustained the objection, and in the colloquy that followed suggested, "You want to have Dr. Arambula step down and call your client up and put . . . ." Counsel made no objection to these remarks, but replied, "His brother is going to prove up the pictures."

Before pronouncing sentence, the court gave a short explanation of its reasoning. With regard to probation, it stated:

> I do not believe based upon the events surrounding this matter, including the history of the matter, that he would be a candidate for probation. There's too many question marks left unanswered, including the greatest question mark about whether Mr. Dolard even understands what probation involves and would be willing to adhere to the terms and conditions of probation.

3

Defense counsel did not object to these remarks. The court sentenced Dolard to twenty years in prison.

Dolard moved for a new trial, arguing that the trial court impermissibly considered his failure to testify in assessing punishment, and also that the admission of Dr. Arambula's psychiatric testimony violated his due process rights. At the hearing on the motion, the trial judge expressly denied having considered Dolard's silence in assessing punishment, and he denied the motion for new trial.

**Analysis**

## I.     Right against self-incrimination

In his first issue, Dolard argues that in determining his sentence, the trial court improperly weighed his failure to testify at his punishment hearing. This objection was not made during the punishment hearing. Generally, a specific and timely objection made to the trial court is a prerequisite to appellate review. *See* TEX. R. APP. P. 33.1(a). "Where no objection is made, remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous." *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978); *accord Avilez v. State*, 333 S.W.3d 661, 671 & n.13 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). An error is fundamental if it is "so egregious" and created such harm that it denied the defendant "a fair and impartial trial." *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

4

"The decision of what particular punishment to assess within the statutorily prescribed range for a given offense is a normative, discretionary function." *Barrow v. State*, 207 S.W.3d 377, 379–80 (Tex. Crim. App. 2006). The discretion of judge or jury to sentence a defendant within the statutory range is very broad: the Court of Criminal Appeals has described it as "essentially 'unfettered.'" *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006); *see also Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990).

The trial court likewise has discretion in deciding whether to suspend imposition of sentence and place a defendant on community supervision. *See, e.g.*, *Hurley v. State*, 130 S.W.3d 501, 506 (Tex. App.—Dallas 2004, no pet.). "The question of whether an accused is entitled to probation, where the court assesses punishment, rests absolutely within the trial court's discretion under the guideposts of the statute and no authority exists for the accused to require such clemency." *Rodriguez v. State*, 502 S.W.2d 13, 14 (Tex. Crim. App. 1973). The statutory guideposts are "the best interest of justice, the public, and the defendant." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3(a) (West 2006). When the defendant has pleaded guilty to an eligible offense, the judge may defer adjudication when, in his or her opinion, the best interest of society and the defendant will be served. *Id.* art. 42.12, § 5(a).

The Code of Criminal Procedure establishes a liberal rule for the admission of evidence at a punishment hearing:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West 2006).

Dolard argues that in assessing punishment the trial court improperly considered his failure to testify at the punishment hearing. In Texas, a criminal defendant has both a statutory and constitutional right to refuse to testify. The Texas Constitution provides that a criminal accused "shall not be compelled to give evidence against himself." TEX. CONST. art. I, § 10. Moreover, the failure of any defendant to testify on his own behalf "shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005). The federal constitution similarly guarantees: "No person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V; *see also*

6

*Mitchell v. United States*, 526 U.S. 314, 325, 328, 119 S. Ct. 1307, 1313, 1315 (1999) (the Fifth Amendment right not to testify survives a guilty plea, it must be honored at a punishment hearing, and no negative inference from the defendant's failure to testify is permitted at a punishment hearing "with regard to factual determinations respecting the circumstances and details of the crime").

Dolard identifies two statements by the trial court that he contends were comments on his failure to testify. First, he points to the colloquy regarding authentication of the purported photographs of his apartment, when the court suggested: "You want to have Dr. Arambula step down and call your client up and put—make . . . ." Second, he relies on the trial court's statement upon pronouncing the sentence, that "[t]here's too many question marks left unanswered, including the greatest question mark about whether Mr. Dolard even understands what probation involves and would be willing to adhere to the terms and conditions of probation."

In reviewing an appellant's claim that the trial court's statements show the court improperly considered his failure to testify, we must consider the context in which the statements were made. *Cf. Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001) (holding that context must be considered when assessing effect of comment on jury). "It is not sufficient that the language might be construed as an implied or indirect allusion." *Id.* However, remarks concerning the

7

absence of evidence that only a defendant's testimony could supply have been held to be impermissible comments on failure to testify. *Crocker v. State*, 248 S.W.3d 299, 304 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Considered in context, we conclude that the challenged remarks do not demonstrate that the trial court weighed Dolard's failure to testify at the hearing in deciding punishment. Of the trial court's first statement, "You want to have Dr. Arambula step down and call your client up and put—make—", Dolard argues, "The Court's comment was a direct demand that Appellant testify." The court's words, however, were not words of command or demand. Rather, in context the court's comment inquired whether counsel sought to introduce the defendant as a witness out of order so the photographs could be authenticated. In proposing this mode of authentication, the trial court revealed no disposition to consider Dolard's silence as a circumstance against him. *Cf. Carroll v. State*, 42 S.W.3d 129, 130–31 (Tex. Crim. App. 2001) (reversing when trial court "advised defense counsel that if appellant invoked her privilege against self-incrimination, the court would consider that invocation as a circumstance against her when determining her punishment").

Dolard also characterizes the trial court's later reference to "the greatest question mark . . . whether Mr. Dolard even understands what probation involves" as a "direct comment that the trial court considered Appellant's silence as a sentencing factor" or at least an "indirect allusion." But in its previous sentence—

8

"I do not believe based upon the events surrounding this matter, including the history of the matter, that he would be a candidate for probation"—the court referred to the testimony that it did hear, and the court did not mention that Dolard did not testify. This case therefore stands in contrast to the statement at issue in *Mitchell v. United States*, 526 U.S. 314, 119 S. Ct. 1307 (1999), in which the trial court directly and impermissibly stated: "I held it against you that you didn't come forward today." 526 U.S. at 319, 119 S. Ct. at 1311.

The doubts expressed by the trial court as to Dolard's willingness to abide by conditions of probation do not indicate that the judge refused to consider probation unless Dolard testified or otherwise weighed his failure to testify against him. Testimony as to a defendant's ability or willingness to accept conditions of probation need not come from the defendant himself. As both Dolard and the State point out, several of Dolard's relatives and his expert psychiatric witness gave testimony in this regard.

As a whole, the record presented a mixed view of Dolard's readiness to comply with the terms of a proposed probationary sentence. His brother planned to establish a workable living arrangement, but recognized that Dolard had resisted aid from his family in the past and clung to unhealthy behaviors. On a similar note, the State called the court's attention to an outburst by Dolard during his brother's testimony in which he threw a pen on the floor. Moreover, the State emphasized

9

that an apology letter Dolard had written failed to acknowledge his pedophilia and need for treatment.

Without considering the defendant's silence as a circumstance against him, the trial court was entitled to consider a wide range of evidence in exercising its considerable discretion in imposing punishment, suspending sentence, or deferring adjudication. *See* TEX. CODE CRIM. PROC. ANN. arts. 37.07, § 3(a)(1), 42.12, § 5(a); *Chavez*, 213 S.W.3d at 323; *Rodriguez*, 502 S.W.2d at 14. The circumstances revealed in the record do not compel the inference that the trial court's words showed that it required Dolard to testify to consider him for probation, or that the court otherwise weighed his choice not to take the stand as a factor against him. As such, we conclude that Dolard has not shown any fundamental error so egregious that it deprived him of a fair and impartial sentencing hearing. Dolard's first issue is overruled.

## II. Expert testimony and due process

In his second issue, Dolard argues that his right to due process was violated by Dr. Arambula's testimony as an expert witness. He contends that Dr. Arambula's failure to acknowledge the DSM IV or any of the scholarly journals suggested by counsel as a learned treatise indicated that his testimony was not grounded on accepted principles in the field of psychiatry.

10

Dolard's argument is cast as a constitutional argument. Relying on the due process clause of the federal Constitution, he contends that Dr. Arambula's testimony was so unreliable that its admission at his punishment hearing denied him a fair sentencing proceeding. However, the case on which he relies, *Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010), did not hold that scientifically unsound testimony violates the due process clause, but rather that such testimony contravenes the Rules of Evidence. *See* 330 S.W.3d at 270 (citing TEX. R. EVID. 702). The same is true of *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992), a key precedent relied upon in *Coble*. *See* 824 S.W.2d at 573.

Whether Dolard is challenging his conviction on the basis of the due process clause or the Rules of Evidence, his failure to make a timely objection at trial to the admission of Dr. Arambula's testimony waives any complaint for appeal. The Court of Criminal Appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). "This is true even though the error may concern a constitutional right of the defendant." *Id.*; *see also Perry v. State*, 703 S.W.2d 668, 673 (Tex. Crim. App. 1986) (holding that although due process requires that identification of defendant through a "lineup" be "as fair and reasonable as possible," failure to object prior to elicitation of testimony waives any complaint for further review). It is also true when a party

challenges the reliability of expert testimony pursuant to the Rules of Evidence. *Stephens v. State*, 276 S.W.3d 148, 153 (Tex. App.—Amarillo 2008, pet. ref'd) (appellant did not preserve error when he neither objected to expert's testimony at trial nor requested a *Daubert* hearing).

Dolard did not request a *Daubert/Kelly* hearing and he made no objection to Dr. Arambula testifying as an expert witness in psychiatry. While Dolard challenged the reliability of Dr. Arambula's testimony during his closing statement by arguing that it did not satisfy the standards of *Coble*, and he attacked the testimony in his motion for new trial, these challenges were not timely, contemporaneous objections and do not suffice to preserve error in the admission of evidence. *See, e.g.*, *Ranson v. State*, 707 S.W.2d 96, 105 (Tex. Crim. App. 1986); *Bell v. State*, 501 S.W.2d 137, 139 (Tex. Crim. App. 1973). Accordingly, Dolard's second issue is overruled.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).